# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

PAUL R. POPPEL,                                  :

      Plaintiff,                            :
                                Case No. 3:12cv00024

 vs.                                              :

                                District Judge Walter Herbert Rice
MICHAEL J. ASTRUE,                               :   Magistrate Judge Sharon L. Ovington
Commissioner of the Social
Security Administration,                         :

      Defendant.                            :

## REPORT AND RECOMMENDATIONS[1]

## I.    __Introduction__

Plaintiff Paul R. Poppel began working his first paid job in 1974.  He continued working over the years until June 10, 2005, when he was severely injured.  On that date, while employed as a mill operator, Plaintiff's right arm was pulled into an auger and crushed.

In November 2008, Plaintiff filed (protectively) an application for Disability Insurance Benefits with the Social Security Administration asserting that he was eligible to receive such benefits due to his inability to use his right arm and due to depression. Plaintiff sought benefits for a period of disability and for benefits beginning on June 10,

---

[1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

2005, the date of his crush accident, and continuing thereafter. *See* Doc. #6, PageID at 40.

The Social Security Administration denied Plaintiff's application mainly through the written decision of Administrative Law Judge (ALJ) David A. Redmond, who concluded that Plaintiff was not eligible for benefits because he was not under "disability" within the meaning of the Social Security Act. (Doc. #6, PageID at 40-50). Believing he was, and is, under a benefits-qualifying disability, Plaintiff brings the present case challenging ALJ Redmond's decision.

This case is before the Court upon Plaintiff's Statement of Errors (Doc. #9), the Commissioner's Memorandum in Opposition (Doc. #12), the administrative record (Doc. #6), and the record as a whole.

Plaintiff seeks an Order reversing the ALJ's decision and remanding the matter to the Social Security Administration for payment of benefits. He alternatively seeks an Order remanding the case to Social Security for further proceedings. Plaintiff further seeks an Order awarding him costs and reasonable attorney fees under the Equal Access to Justice Act, 28 U.S.C. §2412.

The Commissioner seeks an Order affirming the ALJ's decision.

This Court has subject matter jurisdiction over the parties' dispute. *See* 42 U.S.C. §405(g).

2

## II.    __Background__

### A.    __Plaintiff's Vocational Profile and Testimony__

Social Security Regulations recognize that a person's ability to obtain and perform a paid job depends – in part – upon his or her age, educational background, and skills or training gained during past jobs.  *See* 20 C.F.R. §§404.1520(a)(4), 404.1560 – 404.1568. On the date Plaintiff's arm was crushed, he was 43 years old; on the date of the ALJ's decision, Plaintiff was 49 years old.  Both ages placed him in the category of a "younger person" for purposes of resolving his application for Disability Insurance Benefits.  *See* 20 C.F.R. §404.1563(c).  Plaintiff's formal education ended when he graduated from high school.  His past jobs include work as a parts clerk, mill operator, and school bus driver.

During the administrative hearing, Plaintiff explained that he is married with a 15 year-old daughter and two sons, ages 24 and 21, all living at home.  His wife is a teacher in a Junior High School.

Plaintiff briefly described how his right arm was injured:  "I was cleaning out an auger, and someone else turned on the switch to start it up – pulled my arm into it and chewed it up."  (Doc. #6, PageID at 61).  Plaintiff testified that he "can't really use" his right arm – "[i]t's just, like, a helper arm."  *Id*.  He emphasized, "It's just, like an arm that's just hanging there.... [I] can't use it for anything."  *Id*., PageID at 66.  When asked if he could grasp a glass of water with his right hand, he said, "Well, I can shove the – a glass of water in there, but I can't raise it ...."  *Id*., PageID at 62.  He was right-handed before the crush injury happened.

Plaintiff explained that he has undergone 18 surgeries on his right hand, elbow, and arm due to the crush injury.  One surgery involved replacing his right elbow with an artificial elbow.  He further noted that on his right hand, arm, and wrist, "they fused my knuckles and my thumb....  And they fused my wrists, so I can't move the wrist."  (Doc. #6, PageID at 63-64).  He can close and open his fingers on his right hand but cannot grip with his right hand.  *Id.*, PageID at 64.  He has trouble dressing, especially buttoning buttons and tying shoes.

When asked what he has been told about his prognosis, Plaintiff testified, "They said they can't do anything else, and [the] more I lift and all that, with my arm, [the] quicker my elbow's going to go out.  Then, they're going to have to go in and replace it."  (Doc. #6, PageID at 63).  Plaintiff experiences right-arm pain; it "comes and goes."  (Doc. #6, PageID at 61-62).  On a zero to ten pain scale (zero equaling no pain; ten equaling pain at emergency-room severity), his pain "can be a seven or an eight, and it lasts 20 minutes to ... an hour."  *Id.*, PageID at 67).  When asked what brings the pain on, he answered, "It just comes and goes."  *Id.*  Pain prevents him from sleeping on his right side.

Plaintiff testified that depression causes him to "[g]et grumpy and aggravated much easier than [he] used to."  (Doc. #6, PageID at 61).  Some days depression prevents him from doing things he would otherwise do.  He explained, "some days, I feel like I just want to stay in bed, because I just feel like that – really can't do anything."  *Id.*  He never experienced depression before the crush accident.  And he remembers the accident every day.

4

On a typical day, Plaintiff wakes at 7:00 A.M. and takes his daughter to school.  He then goes to physical therapy after which he returns home and takes a nap.  He eats lunch then waits for his wife to get home from work.  After dinner he might go for a walk with his wife or ride a bike then watch television.  He likes to bike ride.  He cannot use the hand brake on the bike's right side.  To accommodate this limitation, his bike is modified so that both hand brakes are on the left side, allowing him to use both hand brakes with his left hand.

Plaintiff can no longer swim unless he uses a life jacket or a float because he cannot move his right arm.  He used to go fishing a lot "but really can't do that too often now." (Doc. #6, PageID at 62).  He does the laundry once in a while and mows the grass using a riding lawn mower.  He drives a car "all left-handed, and sometimes, it gets ... cramps in it ...." *Id.*, PageID at 60.  He used to play softball but cannot anymore.  He sees friends a couple of times a week; they just talk or watch sports.

### B.    Medical Records and Opinions

Plaintiff's review of his extensive medical records need not be repeated in full here. (Doc. #9, PageID at 1801-06).  Yet some highlights are worth mentioning.  On the day of Plaintiff's crush injury, an emergency room physician noted that Plaintiff "had a near amputation of his distal radius and ulna.  (Doc. #6, PageID at 1717).  X-rays revealed a radial head fracture, distal ulnar fracture, mid-shaft radial fracture, distal radioulnar joint disassociation, multiple carpal fractures and dislocations, and a possible brachial plexus injury. *Id.*, PageID at 262.

5

The day after his crush injury, Plaintiff underwent an open reduction, internal fixation of the right forearm with split/thickness skin graft. (Doc. #6, PageID at 262). After further treatment, surgeries, and physical therapy, Plaintiff underwent his right elbow replacement surgery in August 2006. *Id.*, PageID at 514, 523, 531. And he went through many months of physical therapy and additional surgeries. *See* Doc. #9, PageID at 1801-05 (and medical records cited therein).

Plaintiff's treating physicians for his right hand and arm are Raymond Kobus, M.D. and Steven J. Polsey, M.D. Dr. Polsey also treated Plaintiff for depression by prescribing Fluoxetein. The administrative record does not contain an assessment of Plaintiff's Residual Functional Capacity or other evaluation about Plaintiff's work abilities by Dr. Kobus or Dr. Polsey.

The Commissioner relies on the opinion of William Bolz, M.D., who reviewed Plaintiff's medical records on February 9, 2009 at the request of the Ohio Bureau of Disability Determinations. Dr. Bolz completed  a form titled, "Physical Residual Functional Capacity Assessment." (Doc. #6, PageID at 1652). Page one of the form states, in part, that the "RFC Assessment Is For," followed by four options:  "Current Evaluation"; "Date 12 Months After Onset," with a blank line for the date of onset; "Date Last Insured" with a blank line for the date last insured; and "Other." A box is checked next to "Current Evaluation" rather than any of the three other possibilities. Because of this, the form Dr. Bolz complete on February 9, 2009 establishes that he was providing a Current Evaluation of Plaintiff's Physical Residual Functional Capacity. By not checking

6

any of the other possible dates, the form further indicates that Dr. Bolz did not provide his assessment of Plaintiff's work abilities and limitations either on the Date 12 Months After Onset or his Date Last Insured.  *Id.*, PageID at 1652, 1620.  This is significant for reasons to be explained later.

Dr. Bolz opined that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently; he could stand and/or walk about six hours in an eight-hour workday; he could sit about six hours in an eight-hour workday.  (Doc. #6, PageID at 1653).  Dr. Bolz further indicated that Plaintiff could perform no lifting, pushing, or pulling with his right arm.  *Id.*, PageID at 1654, 1655.  Dr. Bolz based his opinions on Plaintiff's right hand, elbow, and arm injuries, including fractures of his "radial head, distal ulnar, mid shaft radial...."  Dr. Bolz further noted that Plaintiff had undergone total right elbow replacement and in December 2008 was "still in protective splint and only able to use R[ight] hand for light use.  R grip strength noted to be 25-35 pounds, L[eft] hand grip strength noted to be 100#s.... [I]mages show some post-trauma arthritis in his R elbow." *Id.*, PageID at 1653-54.

Dr. Bolz believed that Plaintiff was unable to crawl or to climb ladders, ropes, or scaffolds.  *Id.*, PageID at 1654.  Dr. Bolz concluded that Plaintiff's "statements are credible in nature and severity, and that the medical records fully support his reported symptoms and limitations with his right hand and arm.  *Id.*, PageID at 1657.

The Commissioner also relies on the opinion of W. Jerry McCloud, M.D. who reviewed the file for the Ohio Bureau of Disability Determinations in June 2009.  Dr.

McCloud wrote:  "There is no new medical [sic] since the prior decision that would alter the 2/9/09 RFC.  For additional detail, medical support and rationale, see the 6/2/09 5002. Affirming the RFC."  (Doc. #6, PageID at 1780).

On July 1, 2009, Steven J. Meyer, Ph.D. reviewed the record and completed a Psychiatric Review Technique form.  Dr. Meyer  believed that Plaintiff did not have a severe mental impairment, although he noted that Plaintiff suffered from reactive depression, a medically determinable impairment.  (Doc. #6, PageID at 1781, 1784).

Under the heading, "credibility," Dr. Meyer found Plaintiff's description of his symptoms and their effect on his functioning to be credible due to his physical injuries. Dr. Meyer observed that Plaintiff did not exaggerate his symptoms of depression.  Both Plaintiff and his treating physician reported mild symptoms.  Plaintiff's reported symptoms and medications were intermittent. Plaintiff had no significant treatment for depression. And his activities of daily living were "consistent with [his] allegations of functional limitations."  (Doc. #6, PageID at 1793).

**C.** **Vocational Expert Testimony**

The ALJ's central question to the vocational expert asked her to consider a hypothetical person of Plaintiff's age, education, and work experience whose residual

functional capacity[2] is limited to activity at the "light exertional level,[3] but that he would not be able to use his dominant hand and arm."  (Doc. #6, PageID at 68)(footnote added).

With these characteristics in mind, the vocational expert testified that the hypothetical person could perform  jobs as a "companion, greeter, flagger, school bus monitor."  (Doc. #6, PageID at 68).  Four thousand such jobs exist in the regional economy, which is representative of the national economy, according to the vocational expert.  *Id.*

### III.  "Disability" Defined, Administrative Review, and the ALJ's Decision

The Social Security Administration provides Disability Insurance Benefits (DIB) to individuals who are under a "disability," among other eligibility requirements.  *Bowen v. City of New York*, 476 U.S 467, 470 (1986); *see* 42 U.S.C. §423(a)(1)(D).  The term "disability" – as defined by the Social Security Act – has specialized meaning of limited scope.  It encompasses only those who suffer from a medically determinable physical or mental impairment severe enough to prevent them from engaging in substantial gainful activity.  *See* 42 U.S.C. §423(d)(1)(A); *see also Bowen*, 476 U.S. at 469-70.

Social Security Regulations require ALJs to resolve a disability claim through a

---

[2]  A person's "residual functional capacity" refers to what the person can and cannot do despite his or her mental and physical impairments.  20 C.F.R. §404.1545; *see Howard v. Commissioner of Social Sec.*, 276 F.3d 235, 239 (6th Cir. 2002).

[3]  "Light work" involves lifting no more than 20 pounds at a time, frequent lifting of up to 10 pounds, and standing and walking for significant portions of the work day.  20 C.F.R. § 404.1567(b).

five-Step sequential evaluation of the evidence.  Although a dispositive finding at any Step

may conclude the ALJ's review, *see also Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir.

2007), if fully considered, the sequential review answers five questions:

1.  Is the claimant engaged in substantial gainful activity?

2.  Does the claimant suffer from one or more severe impairments?

3.  Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?

4.  Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?

5.  Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. §404.1520(a)(4); *see also Colvin*, 475 F.3d at 730; *Foster v. Halter*, 279

F.3d 348, 354 (6th Cir. 2001).

ALJ Redmond found as follows:

Step 1:  Plaintiff met the insured status requirements of the Social Security Act

through December 31, 2010.  Plaintiff had not engaged in substantial gainful activity after

June 10, 2005.

Step 2:  Plaintiff has the severe impairment of "crush injury to dominant right arm."

(Doc. #6, PageID at 43).

Step 3:  Plaintiff did not have an impairment or combination of impairments that

met or equaled the level of severity described in the Listings, 20 C.F.R. Subpart P,

Appendix 1.

Step 4:  Plaintiff has the Residual Functional Capacity to perform a light exertional

work "with the following additional limitation:  no use of dominant right arm or hand." *Id*,

PageID at 44.  Plaintiff could not perform any of his past relevant work.

Step 5:  Considering Plaintiff's age, education, work experience, and Residual

Functional Capacity, jobs existed in significant numbers in the national economy that he

can perform.

The ALJ's findings throughout his sequential evaluation, led him to ultimately

conclude that Plaintiff was not under a disability and hence not eligible for DIB.  (Doc. #6,

PageID at 40-50).

## IV.  <u>Judicial Review</u>

Judicial review of an ALJ's decision proceeds along two lines:  "whether the ALJ

applied the correct legal standards and whether the findings of the ALJ are supported by

substantial evidence."  *Blakley v. Commissioner of Social Sec.*, 581 F.3d 399, 406 (6th Cir.

2009); *see Bowen v. Commissioner of Social Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

Review for substantial evidence is not driven by whether the Court agrees or

disagrees with the ALJ's factual findings or by whether the administrative record contains

evidence contrary to those factual findings.  *Rogers v. Commissioner of Social Sec.*, 486

F.3d 234, 241 (6th Cir. 2007); *see Her v. Commissioner of Social Sec.*, 203 F.3d 388, 389-

90 (6th Cir. 1999).  Instead, the ALJ's factual findings are upheld if the substantial-

evidence standard is met – that is, "if a 'reasonable mind might accept the relevant evidence as adequate to support a conclusion.'"  *Blakley*, 581 F.3d at 407 (quoting *Warner v. Commissioner of Social Sec.*, 375 F.3d 387, 390 (6th Cir. 2004).  Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance ...."  *Rogers*, 486 F.3d at 241.

The second line of judicial inquiry, reviewing for correctness the ALJ's legal criteria, may result in reversal even if the record contains substantial evidence supporting the ALJ's factual findings.  *Rabbers v. Commissioner of Social Sec.*, 582 F.3d 647, 651 (6th Cir. 2009); *see Bowen*, 478 F.3d at 746.  "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'"  *Rabbers*, 582 F.3d at 651 (quoting in part *Bowen*, 478 F.3d at 746 and citing *Wilson v. Commissioner of Social Sec.*, 378 F.3d 541, 546-47 (6th Cir. 2004)).

## V.  <u>Discussion</u>

### A.  <u>Plaintiff's First Claimed Error</u>

Plaintiff argues that the ALJ committed reversible error when assessing his Residual Functional Capacity by failing to provide any reasons for rejecting the opinion and evidence of the treating physicians, Drs. Polsey and Kobus, and by substituting his own non-medical opinion in place of these physicians.  These contention lack merit

because neither treating physician submitted an assessment of Plaintiff's physical Residual Functional Capacity or their opinion about Plaintiff's abilities or limitations in any particular work tasks. Without such an assessment or opinion by either treating physician, the ALJ could not have overlooked their opinions and did not err by omitting his reasons for rejecting their opinions – or, more accurately, their non-existent opinions. And, without assessments or opinions by these treating physicians concerning Plaintiffs' work abilities and limitations, the ALJ did not err by substituting his own lay medical opinion in place of the non-existent opinions by treating physicians.

Plaintiff also views as incorrect the ALJ's statement that two physicians reviewed the record for the Ohio BDD. Yet, as the Commissioner points out, the administrative record contains the opinions of two record-reviewing physicians for the Ohio BDD: Dr. Bolz and Dr. McCloud. *See* Doc. #6, PageID at 1780. The ALJ, therefore, was correct on this point.

Plaintiff further contends that the ALJ incorrectly interpreted Dr. Bolz's assessment of Plaintiff's Residual Functional Capacity by omitting Dr. Bolz's restrictions of no reaching in any direction and no handling, and by not giving any weight to Dr. Bolz's opinion that Plaintiff could not make a fist or close his right hand and needed to use his left hand for everything. These contentions lacks merit because the ALJ's assessment of Plaintiff's Residual Functional Capacity concluded that he could not perform any work activity using his right arm or hand. Specifically, the ALJ limited Plaintiff to "no use of dominant arm or hand." (Doc. #6, PageID at 44). This limitation not only incorporates the

13

limited work abilities Plaintiff identifies in Dr. Bolz's opinions, it also incorporates any and all physical limitations Plaintiff might arguably have on his ability to use his right arm or hand at work.  Consequently, the ALJ did not incorrectly interpret this aspect of Dr. Bolz's opinions.

However, a careful review of Dr. Bolz's report reveals that he did not address Plaintiff's work abilities and limitations before he (Dr. Bolz) reported his opinions on February 9, 2009.  Dr. Bolz instead assessed Plaintiff's work abilities and limitations at the time he completed his report on February 9, 2009 – not before.  This is seen on the first page of the form he completed.

Page one of Dr. Bolz's form – titled "Physical Residual Functional Capacity [RFC] Assessment" – instructed Dr. Bolz to provide his "RFC Assessment ... For:  <u>Current Evaluation</u>."  (Doc. #6, PageID at 1652)(emphasis added).  The form contains other options that could have asked Dr. Bolz to assess Plaintiff's RFC at other points in time, including the "Date 12 Months After Onset" or the "Date Last Insured" or some "Other" date.  Not one of these other dates was selected.  Only the box next to "Current Evaluation" was selected.  Because of this, Dr. Bolz assessed Plaintiff's work abilities and limitations on February 9, 2009, the date he completed the form.  He did not assess Plaintiff's RFC at any previous point in time – not on the date of his claimed disability onset, not on his date last insured, or not on some other date.

The text of Dr. Bolz's report also fails to contain language indicating that his opinion concerned the extent of Plaintiff's work abilities and limitations before February

14

9, 2009. Although Dr. Bolz considered at least some of the medical evidence pre-dating his evaluation, he did not indicate that his review led him to reach any conclusion about Plaintiff's work abilities and limitations before February 9, 2009. And, again, Dr. Bolz evaluated Plaintiff's Residual Functional Capacity on the date of his review – February 9, 2009 – according to page one of the form he completed.

The ALJ also relied on the opinion Dr. McCloud provided on June 26, 2009. (Doc. #6, PageID at 1780). Dr. McCloud's cursory notation is silent about Plaintiff's work abilities and limitations before February 2, 2009. He simply agreed with Dr. Bolz's opinion because "[t]here is no new medical [sic] ...." *Id*. Given Dr. McCloud's agreement with Dr. Bolz, Dr. McCloud's opinion does not constitute substantial evidence in support of the ALJ's assessment of Plaintiff's Residual Functional Capacity before February 9, 2009. The ALJ did not rely on any other medical source opinion to support his conclusion that Plaintiff retained the Residual Functional Capacity to perform light work with no use of his right hand or arm. *See* Doc. #6, PageID at 44-48.

The ALJ's ultimate conclusion that Plaintiff was not under a benefits-qualifying disability was based, in part, on his assessment of Plaintiff's Residual Functional Capacity beginning on the date of his alleged disability onset, June 10, 2005 and continuing through and past February 9, 2009, the date of Dr. Bolz's opinion. Because neither Dr. Bolz nor Dr. McCloud addressed Plaintiff's Residual Functional Capacity during the time before February 9, 2009, their opinions do not constitute substantial evidence in support the ALJ's assessment of Plaintiff's Residual Functional Capacity during the period starting on

15

his alleged disability onset date, June 10, 2005 and ending on February 9, 2009.

Another way to view this problem with the ALJ's decision is to consider that the ALJ made no specific finding regarding when Plaintiff recovered from his crush injury to the extent he could perform light work with no use of his right arm or hand.  This was no minor or harmless omission.  The administrative record contains well over one thousand pages of Plaintiff's medical records.  *See* Doc. #6, PageID at 259-1794.  These records reveal the severity of Plaintiffs' crush injury, the seriousness of his multiple surgeries, and the long and doubtlessly painful struggle he endured after his right hand and arm were crushed in an auger at work.  Plaintiff's medical records establish as an indisputable fact that he could not work immediately after his crush accident occurred on June 10, 2005.  The medical records further tend to show that Plaitniff did not recover to the level of light work with no use of his right hand and arm until more than one year after his disability onset date (June 10, 2005) – thus making him potentially eligible for a period of disability.  He was, for example, in physical therapy for more than two years, from June 17, 2005 through September 14, 2007, and again starting in February 2008.  He underwent many surgeries, including the surgery the day after his crush injury involving an open reduction, internal fixation of the right forearm with split/thickness skin graft.  (Doc. #6, PageID at 262.  Other surgeries followed.  For example, he underwent surgery on March 30, 2006 involving, in part, a right radial implant arthroplasty, reconstruction of his lateral collateral ligament in his right elbow, and reconstruction repair of his extensor origin muscles of his right elbow.  (Doc. #6, PageID at 527).  In August 2006, he underwent surgery involving

the removal of the previous radial head implant in his right elbow as well as a total elbow replacement.  (Doc. #6, PageID at 514, 523, 531).  He underwent right wrist surgery in January 2007 and in June 2008.  *Id*., PageID at 1442, 1638.  Additional surgery occurred in October 2008 consisting of "1. MP arthrodesis using plate and screw fixation, right index.  2.  MP arthrodesis, right middle finger using plate and screw fixation.  3.  MP arthrodesis, right small index finger using plate and screw fixation."  (Doc. #6, PageID at 1437).  Although Plaintiff's medical records also indicate that Plaintiff was free of pain in his right elbow, these notations are dated well after his elbow-replacement surgery in August 2006.  And, these brief notations about Plaintiff's elbow say nothing about the severity or duration of the pain Plaintiff was otherwise feeling in his right arm, hand, or wrist.  *See* Doc. #6, PageID at 1455, 1457, 1459, 1461, 1463, 1465.

Accordingly, substantial evidence fails to support the ALJ's decision that Plaintiff was not under a disability for the period beginning on the date of disability onset, June 10, 2005 and ending on February 9, 2009, the date of Dr. Bolz's report.

### B.      Plaintiff's Second Claimed Error

Plaintiff contends that the ALJ incorrectly assessed his credibility because the record as a whole supports the ongoing right-arm problems he described in his testimony. Plaintiff also argues that the ALJ erred by failing to consider the credibility factors required by Regulation, including, for example, his prior work history, the observations of his treating physicians regarding the nature of his symptoms, and the precipitating and

aggravating factors.

Pain alone, if the result of a medical impairment, may be severe enough to constitute disability.  *Kirk v. Secretary of H.H.S.,* 667 F.2d 524, 538 (6th Cir. 1981).  The test applicable to evaluating credibility "does not require objective medical evidence of the pain itself."  *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1994).  This, however, does not mean that the absence of supporting objective evidence plays no role in the required analysis; it is merely one aspect of the required analysis.  *See Felisky*, 35 F.3d at 1038-39 (ALJ erred by stopping his credibility analysis after determining the record lacked objective evidence supporting the claimant's credibility).  Instead, the Commissioner's Regulations set forth a list of factors applicable to evaluating a claimant's pain testimony including, for example, the claimant's daily activities; the location, duration, and intensity of the pain; and the effectiveness of treatments for pain including,  but not limited to, medication.  *See* 20 C.F.R. §404.1529(c)(3).

The Sixth Circuit Court of Appeals has incorporated the applicable factors into "a more succinct...." two-part analysis.  *Felisky*, 35 F.3d 1038.  Part one considers "whether there is objective medical evidence of an underlying medical condition...."  *Felisky*, 35 F.3d at 1038 (quoting *Duncan*, 801 F.2d at 853).  If such objective medical evidence exists, then part two considers two alternative questions:

1.    Whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or

2.    Whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

18

*Felisky*, 35 F.3d at 1038-39 (quoting *Duncan*, 801 F.2d at 853).

"[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Walters v. Comm'r of Social Security*, 127 F.3d 525, 531(6th Cir. 1997).  "Nevertheless, an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Id.*

The ALJ correctly set forth the standards applicable to resolving a claimant's credibility. *See* Doc. #6, PageID at 46-47.  The ALJ erred, however, by not addressing Dr. Bolz's opinion regarding Plaintiff's credibility.  Dr. Bolz concluded that Plaintiff's "statements are credible in nature and severity, and that the medical records fully support his reported symptoms and limitations with his right hand and arm."  *Id.*, PageID at 1657. By failing to mention or consider this opinion by Dr. Bolz, the ALJ's decision was contrary to Social Security Regulation, specifically 20 C.F.R. §404.1527(f).  As the Commissioner has explained through the Ruling on "Assessing the Credibility of an Individual Statements":

> Under 20 CFR 404.1527(f)..., administrative law judges and the Appeals Council are required to consider findings of fact by State agency medical and psychological consultants and other program physicians and psychologists about the existence and severity of an individual's impairment(s), including the existence and severity of any symptoms, as opinions of nonexamining physicians and psychologists.  Administrative law judges and the Appeals Council are not bound by any State agency findings, but they may not ignore these opinions and must explain the weight given to the opinions in their decisions.  Therefore, if the case record includes a finding by a State agency medical or psychological consultant or other

19

> program physician or psychologist on the credibility of the individual's
> statements about limitations or restrictions due to symptoms, the ...
> administrative law judge ... must consider and weigh this opinion of a
> nonexamining source under the applicable rules in 20 CFR 404.1527 ... and
> must explain the weight given to the opinion in the decision.

Soc. Sec. Ruling 96-7P, 1996 WL 374186 at *8.

The ALJ discounted the credibility of Plaintiff's statement that he could only lift 7 to 8 pounds with his right arm because "there is no evidence in the record to support this limitation." (Doc. #6, PageID at 47). This is simply incorrect. Dr. Bolz's report supports Plaintiff's stated lifting limitation. Dr. Bolz recognized that Plaintiff noted in one form that he has a 7-pound weight restriction and in another form that he can only lift 8 pounds with his right hand. Dr. Bolz thus had this claimed weight-restriction in mind when he opined in the same paragraph that Plaintiff's "statements are credible in nature and severity. The MER documents and fully supports his alleged sxs [symptoms] and limitations of his R[ight] hand/arm." *Id*., PageID at 1657. Given this evidence, the record contained evidence supporting the lifting limitation about which Plaintiff testified – contrary to the ALJ's finding.

The ALJ next noted that Plaintiff's "left hand and grip are unimpaired." *Id*. The ALJ does not explain why the absence of a left hand/grip impairment makes Plaintiff less credible. The lack of this left hand/grip impairment by itself says nothing about the severity of Plaintiff's right arm, wrist, hand, or finger pain.

The ALJ next recognized, "Plaintiff testified that his right arm pain comes and goes." *Id*., PageID at 47, 67. The ALJ, however, overlooks that Plaintiff further testified

that his pain can reach the level of 7 or 8 on a zero-to-10 pain scale and that it remains at

that level from 20 minutes to an hour. *Id.*, at PageID 67. He also testified that he cannot

sleep on his right side due to his pain. *Id.* By recognizing only that Plaintiff's pain comes

and goes, the ALJ failed to consider all of Plaintiff's testimony, which was necessary

given both the severity of his pain levels when present and the significant effect pain has

on Plaintiff. Such considerations tend to support Plaintiff's pain testimony.

The ALJ also found that Plaintiff's "regular and continued levels of daily activity is

consistent with someone who, at the most, has limitations, rather than someone who is

disabled." *Id.*, PageID at 47. In support of this, the ALJ refers to Plaintiff's testimony that

he "visits with friends regularly, goes to church, and is involved with his daughter." *Id.*

The ALJ also noted that Plaintiff modified "his bike so he can continue to enjoy one of his

hobbies ...." *Id.* Although such activities may say something about the severity of

Plaintiff's depression, these activities provide little, if any, insight into the severity or

duration of Plaintiff's pain. Moreover, such minimal levels of activity are consistent with

Plaintiff's testimony that his pain comes and goes. The ALJ also neglected to explore

what physical activities, if any, that Plaintiff engaged in when he visits regularly with

friends or when he with his daughter. His testimony does not reveal much about his bike

riding, and the ALJ failed to ask Plaintiff any questions about how long or how

strenuously he is able to ride his modified bicycle. As to church attendance, Plaintiff did

not indicate how often he went to church or what physical activities he engaged in while at

church. And his church activities seem more limited than before his crush accident

21

because he can no longer play softball in the church league. *Id*., PageID at 65.

Although the Commissioner points to certain other evidence in the record to support the ALJ's credibility determinations, the existence of that evidence does not negate or nullify the ALJ's errors described above. At best for the Commissioner, that evidence indicates isolated activities – such as attending a "wrestling practice where he [wa]s a coach" or that he "fell out of a canoe" – that without more specific information, these isolated notes do not conflict with Plaintiff's pain testimony. *See* Doc. #12, PageID at 1826-1828 (record citations therein); *see also Rogers v. Comm'r of Social Security*, 486 F.3d 234, 248 (6th Cir. 2007) (daily activities such as ability to drive, clean an apartment, care for two dogs, do laundry, read, do stretching exercises, and watch the news constitute "somewhat minimal daily functions ... not comparable to typical work activities.").

The ALJ further recognized, "the record shows that [Plaintiff] takes pain medication only on an 'as needed' basis." (Doc. #6, PageID at 47). Yet, without more specifics, which Plaintiff's testimony lacks, his pain medication taken "as needed" – like his other daily activities – tends to support the credibility of Plaintiff's testimony that his pain comes and goes. Additionally, his acknowledgment of "as needed" medication use tends to show that he was not attempting to exaggerate his symptoms but was instead providing accurate information to the ALJ.

Plaintiff, moreover, correctly points out that the ALJ should have also considered the fact that Plaintiff had a lengthy work history that was interrupted only when his right arm was crushed in a work accident. This contention is well taken. Plaintiff's lengthy –

22

over 30-year work history – which began in 1974 and continued to until a specific

disability onset date (the date of his crush accident on June 10, 2005), constitute factors

generally applicable to credibility determinations and specifically applied to and supported

Plaintiff's credibility.  *See Felisky*, 35 F.3d at 1041 ("Additional factors supporting

Felisky's credibility are that she had a long, 17 year work history, and that her alleged

disability can be traced to a specific onset date.").

Accordingly, although the ALJ's credibility determinations regarding Plaintiff's

pain testimony are undoubtedly due "great weight and deference," *Walters*, 127 F.3d at

531, the ALJ's missteps here – including, but not limited, to the evidence he overlooked

such as Dr. Bolz's credibility opinion, which was based on Plaintiff's medical records –

overcome the deference that is due.[4]


## VI.   <u>Remand Is Warranted</u>

If the ALJ failed to apply the correct legal standards or his factual conclusions are

not supported by substantial evidence, the Court must decide whether to remand the case

for rehearing or to reverse and order an award of benefits.  Under Sentence Four of 42

U.S.C. §405(g), the Court has authority to affirm, modify, or reverse the Commissioner's

decision "with or without remanding the cause for rehearing."  *Melkonyan v. Sullivan*, 501

U.S. 89, 99 (1991). Remand is appropriate if the Commissioner applied an erroneous

---

[4]  Because a remand is warranted in this case, an in-depth analysis of the parties' contentions
concerning the ALJ's evaluation of Plaintiff's depression is unwarranted.

principle of law, failed to consider certain evidence, failed to consider the combined

effect of impairments, or failed to make a credibility finding. *Faucher v. Secretary of

H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994).

In the instant case, a judicial award of benefits is warranted for the time period

beginning on June 10, 2005, the date of Plaintiff's crush accident, and continuing until

February 8, 2009, the date before Dr. Bolz's opinion. This is so because Dr. Bolz's

opinion does not constitute substantial evidence supporting the ALJ's non-disability

decision during this period and because Plaintiff's medical records constitute

overwhelming evidence of his disability during this period or, at a minimum, constitute

strong evidence of Plaintiff's disability while contrary evidence is weak. *See Faucher*, 17

F.3d at 176.

A judicial award of benefits is unwarranted for the time period beginning on

February 9, 2009 because the evidence of disability beginning on that date is not

overwhelming and because the evidence of a disability beginning on that date is not strong

while contrary evidence is weak. *See Faucher*, 17 F.3d at 176. Yet Plaintiff is entitled to

an Order remanding this case to the Social Security Administration pursuant to Sentence

Four of §405(g) for consideration of Plaintiff's eligibility for Disability Insurance Benefits

beginning on February 9, 2009 due to the problems discussed herein with regard to the

ALJ's credibility determination. On remand, the ALJ should be directed (1) to re-evaluate

Plaintiff's credibility under all the evidence of record and under the legal criteria set forth

in the Commissioner's Regulations, Rulings, and as required by case law; and (2) to

24

reconsider, under the required sequential evaluation procedure, whether Plaintiff was under a disability and thus eligible for Disability Insurance Benefits beginning on February 9, 2009.

Lastly, because Plaintiff has not presently supported his request for costs and reasonable attorney fees under the Equal Access to Justice Act, such an award is not presently warranted.  Plaintiff remains free to seek costs and reasonable attorney fees by motion in this case.  The undersigned expresses no present opinion regarding whether or not costs or attorney fees are warranted in this case.

## IT IS THEREFORE RECOMMENDED THAT:

1.  The Commissioner's non-disability finding be vacated;

2.  The case be remanded to the Social Security Administration for the purpose of awarding Disability Insurance Benefits to Plaintiff Paul R. Poppel for the period beginning on June 10, 2005 and ending on February 8, 2009 consistent with the Social Security Act;

3.  No finding be made as to whether Plaintiff Paul R. Poppel was under a "disability" within the meaning of the Social Security Act beginning on February 9, 2009 and this case be remanded to the Social Security Administration under Sentence Four of 42 U.S.C. §405(g) for further consideration consistent with this Report; and

4.  The case be terminated on the docket of this Court.

January 8, 2013

                                  s/Sharon L. Ovington
                                  Sharon L. Ovington
                             United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).

26